Oral argument not to exceed 15 minutes per side. Mr. Letterman for the Plaintiff Appellant. Good morning. Ron Letterman on behalf of the Plaintiff Appellant. If I may reserve three rebuttal please. This case comes before this court primarily under a collateral estoppel issue that arises under state of Michigan standards. The trial court dismissed this action and concluded that collateral estoppel applied premised upon a jury finding of negligence on behalf of this plaintiff Watermark in the underlying Henderson trial. Subsequent to that trial, the trial court vacated the judgment in that action. The case settled and the judgment again was vacated as part of that settlement. Under Michigan collateral estoppel rules, the primary requirement for application of collateral estoppel is the existence of a valid and final judgment upon which the defendant may assert collateral estoppel. If there is no existing valid and final judgment, then collateral estoppel is not available. I haven't seen too many that say just what you said and one could say here, well, there's no final judgment because it was vacated as part of the settlement. Am I right? It doesn't help or hurt either of you, but I really haven't seen anything just like this. You're correct. You're correct. What we have in Michigan is number one, the ability of a judge to vacate a judgment under the court's estoppel rules, and number two, the existence of a quote unquote valid final judgment as set forth by the Michigan Supreme Court. There is no authority in either way, as you indicate, with respect to whether or not a valid judgment may include a judgment that's been set aside. Here, a judge can clearly vacate a set-aside judgment for various reasons and could then be appealed, but here there's no substantive reason for the vacating. It was a settlement. As I understand from the briefing, your side paid significantly less than the total judgment, 70% or something, but you could just as easily have paid 99.9% for the benefit of having the judgment vacated. So if we had a rule that any time you settle, there's no effect of it, wouldn't that give the losing party, the liable party, an out from what the jury found simply by settling for virtually the full amount of the judgment? Parties, and in particular, judgment debtors never want to see a judgment on their record. One of the impetuses to settle a case not only is to have a reduction in the jury verdict, but to have the judgment vacated and excluded from the record of the judgment debtor. It becomes at that point, if the parties agree, it becomes a judgment debtor. We're not talking about any debts. He's the judgment debtor at that point. Before the judgment is set aside, he's the judgment debtor. So at that point, it's up to the trial court. In that case, the trial court could do one of two things. If it wants the judgment to remain intact for any purpose, including for collateral estoppel purposes, the judgment, I'm sorry, the judge may insist on having a satisfaction of judgment, even if the judgment was satisfied for an amount less than the actual judgment itself. But the judge is impartial. He doesn't really care. The judge would care, however, because if the judgment is set aside, then there is no longer a valid judgment for purposes of collateral estoppel, and any subsequent lawsuit, such as this lawsuit for indemnity, would have to be retried by that same judge. And that's what we had done here. We re-filed. Not necessarily. It can go to a different judge. Well, under the local rules, if it arises out of the same occurrence and transaction, it's going to be reassigned to the same judge that had it initially. And so we re-filed. We didn't re-file. We initiated this lawsuit. You might create diversity. I'm sorry? You might create diversity with the new party. You do create, we did create diversity. And that permitted Morrison to go and to remove the action to federal court. Now the issue at that point becomes, what are the powers of the federal court to create an exception where none exists? I didn't really understand your answer to Judge Boggs' question, which seems to me a really important one. Yes. If we rule for you, there's a serious incentive for what you call judgment debtors to pay to get rid of these judgments. Now you say the innocent reason for doing this is people don't like having judgments out there. I'll credit that, that there is an innocent explanation for doing this. But there's also a very sharp-elbowed explanation if we say what you're doing is okay. And why isn't that just going to create a situation where people are trying to do this all the time? I take it your only answer is, well, they can only do it if district courts or trial courts let them do it. Is that your answer? That's my partial answer. But the second partial answer would be that it furthers, it actually furthers the goal of collateral estoppel sometimes when it eliminates continued litigation in that principal action. In this case, had the case not settled, the underlying action would have gone up to the Michigan Court of Appeals. There are a number of appealable issues which plaintiff's counsel, underlying plaintiff's counsel recognized could result in a new trial. You get two levels of appeals in the state of Michigan. You get the Court of Appeals and the Supreme Court. Either of them could have reversed the judgment. I don't get this. I don't get this point. I mean, I get why you're calling it partial, but I'm starting to think it's non-existent. No, because it eliminates- Why does anything? It eliminates- All of those things are still true in a settlement context. The question is whether you can pay to get rid of the judgment and get rid of the collateral estoppel effect. That's the key point. When you say- If we have a ruling against you, you're still back where you were. Unless you're really confirming for me this is the utility of it. No, what I'm trying to say is that when you settle the case and you definitely want to encourage settlement, you are eliminating the continuation of that lawsuit. You're just saying settlement is good. Settlement is good. Whether settlement is good isn't the same as whether we give the underlying jury verdict collateral estoppel effect. We can all say settlements are still good. You can still have settlements. The question here is- And what I'm saying is that it actually, my position does further the principles underlying collateral estoppel. Because collateral estoppel serves to try to diminish or eliminate all further litigation. Not only- Of the issues that are- Of the issues. Had the case not settled- Had the case not settled, the underlying Henderson case would have gone up to the Michigan Court of Appeals. It would have gone up thereafter to the Michigan Supreme Court, no matter who won or lost, because of the amount of money that was involved. And then there was a very good chance that it was going to go back to the circuit court for a retrial. Are we supposed to consider all that? I mean, is that a factor in whether collateral estoppel applies or not? It does. Yes, it is a factor because- What's your best case on this? Do you have any Michigan cases that are on point here? Well, it would be the case- Directly on point, no. That's the problem. Directly on point, no. But the Monette case, which was cited by Morrison, talks about encouraging settlement and not duplicating lawsuits. So collateral estoppel is flexible. Obviously, there's no rigid adherence to it. You've got flexible guidelines, and the court is supposed to weigh those guidelines in Michigan. Now you have a situation where, exercising the diversity jurisdiction argument, Morrison removed the case to federal court. And therefore, you have the second point, which is, what kind of constraints does the federal court have in creating new law, essentially, or in creating an exception to the very strict requirement of the existence of a valid judgment? We opened up this hearing with Judge Sutton observing that there's no case law either way. So does that mean that there is indeed sufficient data, which is the term that the Sixth Circuit uses, which would permit the federal district court to create new law, to create an exception where one did not exist previously? Given the restraint that the federal courts are supposed to use when analyzing Michigan law, it's our position that the federal district court did not have that authority. It had the authority instead to enforce the guidelines set forth by the Michigan Supreme Court, which require a valid judgment, no exceptions expressed by the Michigan Supreme Court. Why didn't you implead Morrison? In the initial lawsuit, a strategic decision was made not to. And I now understand the long-term approach you had. Well, again, under the laws that existed at the time, we had the right to try to set aside the judgment, and then to bring in Morrison without collateral estoppel. The law permitted that. We started out by all agreeing there was no law on this. There was no law on this, which creates an exception to the general rule set forth by the Michigan Supreme Court that you need a valid judgment. Counsel, your time's almost up. Can you skip for a moment to your contract claim? Because it seems to me if we rule against you on this part, the collateral estoppel claim with respect to the contract claim is much weaker than with respect to the indemnity. Yes, it's our position that the contract law exists separately. The breach of contract claim exists. You can be negligent, and yet they can have breached their duties as well. You're both bad guys. That's correct. Comparative negligence. Our comparative negligence as against the underlying plaintiff does not serve as a bar to our breach of contract claim against Morrison, especially when our alleged negligence arose from Morrison's alleged failure to do its function. All of that could be hashed out at any future trial and simply a question of whether you can proceed with your breach of contract claim, right? Correct. Correct. All right. Thank you. Thank you. Mr. Eblen. Thank you, Your Honor. May it please the Court. This case has the potential to implicate public policy and how civil litigation proceeds and strategic choices that are undertaken by lawyers and the potential to multiply and expand civil litigation. The reason for... Does your client know about this litigation? Formal notice... The first case. The first case, Morrison received notice days after the jury verdict. So he didn't know about the filing of the action. So your point would be you had no chance to intervene. Exactly. No chance to intervene. And really, it's from a policy perspective... I don't think you wanted to intervene, did you, in this case? Well, no. You never want to invite yourself into a lawsuit. Of course not. But the whole purpose behind the policy... If the case comes out their way, future people in your client's position would intervene. And our submission to that is that would create poor public policy and poor incentives in civil litigation. Because at the point that they're sued, they can make strategic decisions to assess risk, to mitigate their potential damages and loss. And the biggest policy implication for other potential litigants like Morrison, which may or may not receive notice of a lawsuit, is the party that's actually in the case has unilateral control. Over their ability to make strategic decisions and to have access to evidence. To have access to that evidence while it's still fresh. And to shape the facts without dealing with the trouble of not only litigating with a plaintiff, but litigating with another co-defendant. They can't wait too long, though, because they'd have statute of limitations problems if they tried to sue you, you know, five years down the road. That's absolutely true, your honor. But you still... That in no way mitigates the difficulty of your unilaterally setting depositions, doing the discovery, working up your case for trial. And you can hold back certain cards, which the Michigan Supreme Court has warned against. In this case, you meaning them? Yes, exactly. The defendant in the original personal injury wrongful death case can sit back, hold his cards, make decisions, leave the other potential parties out in the dark. And work up the case to take one bite to see if they fare better not having other potential adverse co-defendants in the case. If that doesn't go well, in the meantime, from a policy perspective, they have had that unilateral access to make adverse facts for potential parties that don't even know what's going on in the litigation. You know, I get all your points, but I mean, collateral estoppel does require final judgment to be out there. It requires... There's no judgment out there. It requires... Where we've applied... Anybody's applied collateral estoppel, best I can tell, when there's no final judgment there. I think... No judgment, period. I think that's partially true, Your Honor. But what the case law about collateral estoppel and applying restatement section 13 of judgment says is collateral estoppel, the final judgment rule, doesn't require a final judgment in the traditional technical sense. And it walks through what does it mean for estoppel purposes to have a valid final judgment. And that standard is, is the decision of the court, whether it's a jury verdict, a judgment, or a legal ruling, sufficiently firm and procedurally definite? If you think about it this way, I don't think this is that far off. You know, one rule is if a case becomes moot on appeal. So the U.S. Supreme Court just had a case like this just the other day. The normal rule is when it gets moot and you haven't been able to appeal all the way up. Monsingor says you vacate the prior judgments. Okay. Now, that's not through a settlement. I get it. But the point is, it's mooted. And you don't need to... You don't need an agreement about this. This is what happens as a matter of law. The Superior Court vacates the lower court rulings because no one had a chance to appeal it all the way up. One could make the argument in your case. Even if this settlement agreement had said nothing about vacating the judgment, that would have been a natural corollary of a settlement because a settlement would moot the case. It would not allow appeal all the way up the ladder. And with no appeal in a mooted case, the norm is Monsingware, which is to vacate everything below. And I'm pretty confident, say with this U.S. Supreme Court decision just the other day, that the D.C. Circuit ruling that they vacated, that ain't worth much collateral estoppel effect. I don't think you're going to get anywhere with that. And so why forget that there looks like there's some artful litigating going on? In a way, it's who cares? Isn't that what would have happened anyway if you settle and moot a case on appeal? I don't think for estoppel purposes, that is the outcome that most courts would reach. That's not the outcome that the Third Circuit Court of Appeals reached in Sentinel. That's not the outcome the Ninth Circuit reached in the Bates case when they assessed... Those are, to your point, that there is not... Are those mootness cases? What's that? Are those mootness cases, what you're talking about? Those are both cases where a final judgment in one instance from a jury, in another instance, a legal ruling of findings, in fact, and conclusions of law from a court were both vacated as a condition of settlement. And subsequent lawsuits were filed. And the Third Circuit and Ninth Circuit, respectively, applied non-mutual defensive collateral estoppel in the next action to bar that claim. And said in the Third Circuit specifically... I just want to make sure you... You know what I'm saying when I'm talking about Munsingware? Because if you don't, don't worry about it. But it's best just to say you don't know what I'm saying. I don't know the intricacies of Munsingware. Okay, great. All right. So you're talking about regular cases. Okay, fine. I got it. Exactly. But I think they're highly analogous because those are the two published federal circuit courts that have wrestled with this. In particular, I think the Sentinel case is persuasive because that involved a state court judgment in Tennessee Chancery Court. Extensive findings of fact that were reached. Case settles after the findings of fact. Litigation later ensues in the District of New Jersey. There is not the exact identity of claims, causes of action, but it still relates to the issue, the bundle of same facts that the Tennessee court construed and rendered judgment on that was vacated by settlement. And the District of New Jersey, followed by the Third Circuit said, for purposes of the restatement position, which was what Tennessee law would have applied, even though Tennessee law had no case directly on point, looked to Tennessee law, which applied the restatement view, and reached the conclusion that the judgment, although vacated by settlement, was sufficiently final, procedurally definite, and firm to be accorded preclusive effect. Let me ask you, let's assume we rule in your favor on that point. What about the breach of contract claim? That is, why is there any problem with there being negligent in action one, and you're having breached the contract by not carrying out your duties under the contract? Because collateral estoppel applies to issues. It does not require identity of claims. It does not require identity of causes of action. So the issue here is then what? If the issue is they were negligent, that's what the jury was instructed on, what is the logical or necessary conflict between their being negligent and your breaching the contract? Why can't you both be bad guys? There is absolutely no conflict for application of estoppel to bar that claim, because whether you call it a contract claim or a negligence claim, the issue that was litigated in this trial, in the trial between Watermark and the plaintiffs, was what party bore responsibility, in whole or in part, for allowing this patient to have access to a supply clause? They bore it in part, but why can't you have also had liability on one theory or another? That's what I'm saying. In fact, I thought your statement there was exactly right. The jury found they bore some liability, but some doesn't mean all. And had we been sued in the first case, had they not fully litigated that issue and been found wholly liable? Well, but now you've said wholly. A minute ago, you said to some extent. For sure. And how did the first case litigate the issue of your client's negligence? I don't understand how you can say that was litigated. It's the issue of who was responsible, what party or potential party was responsible for allowing this patient to have access to a dangerous substance that led to her death. That factual series of facts was litigated. Whether Morrison breached its contract and a breach of contract played any role in the injury and the damages that flowed from it all relates to the same factual occurrence. And that's how estoppel is different from res judicata. And the case law that we've cited from this court bears that out. You don't need identity of exact claims. If you look at, for instance, you look at cases like the Autry case, which we've cited, 1983 case for false arrest and other matters. They applied estoppel related to probable cause state court proceedings. Those findings later barred a civil 1983 case, the Monac case, Michigan Supreme Court. It's the same thing where case one involves driver suing another driver that causes an injury. Let me put it this way. So you can have a principal get sued. The principal gets sued because they left this detergent or whatever it is out so someone could use it. And the principal clearly has responsibility for that. It's proper to sue the principal. And it's fair to say the jury was right in saying the principal's negligent and wholly caused the injury and death. I don't understand how that prohibits the principal from suing their agent when their agent messed it up. I just don't get that. In other words, the principal, as happened here, can hire out or have employees or whatever, law clerks doing things. You can then sue the agent. The principal can sue the agent because the agent's the one that made the mistake. You can in the first proceeding. But why is that so? I don't, I don't, that's what your position is. The only way they can do it is by impleeding. You're saying impleeder is mandatory and it's not. Impleeder is not. It says may. It does not say shall. It says you may. So Morrison may have been brought in. It doesn't say you have to bring Morrison in. And if you don't, you're stuck. That's just, that is what the rules say. Correct. But I think you always run the risk. If you litigate something and work up facts and have a judge or jury make a determination on what allowed someone to ingest a dangerous substance and cause that person's injury. If you fully litigate that issue, that series of facts. How, when you say fully, how is there any litigation at all about the relationship between the principal and the agent with respect to whether the agent dropped the ball with respect to its obligations to the principal? I just have no idea how that had anything to do with the first lawsuit. The principal could be 100% liable. And that's what you litigated. And that's, or they were litigated. They won. But that still allows the principal to go back to their agent and say, what were you thinking? And you had a contractual duty to do this. You didn't. So you're, you're going to pay some of the damages. It's because they chose to litigate those facts and they took positions in the litigation. Which facts of the principal agent relationship were litigated? You said they chose to litigate those facts. What part of this lawsuit involved the principal agent relationship? They chose to. Between Watermark and Morrison. They chose to advance a case theory at trial that argued neither Morrison nor Watermark did anything wrong. Instead, last we knew, this closet was locked up when everybody left for the day. And they controlled that litigation. They controlled those bundle of facts and how to shape them in that case. And that's where the policy bases for collateral estoppel come in and apply. Your position is if they didn't plead your claim, that's the end of the case? Collateral estoppel stops it. They had their chance and that's the end of it. Under this fact pattern and what happened in this case, yes. What's your case support for the idea that impleader is mandatory? Because that's what, that is what you're saying. Impleader is mandatory in some settings. What's the case that says it's mandatory in this setting? I don't have a case in front of me that says impleader under Michigan state court law is mandatory in some settings. What we have is very defined bodies of collateral estoppel law where if you fully litigate an issue, not necessarily a single claim, not necessarily identical claims or theories, but if you litigate that fully and reach a judgment that's sufficiently final, in some instances, you will not be able to go back. And even if you decide you're going to reinvent your theory, call it a contract claim, an indemnity claim, try to differentiate the theory from the first case, the effect could be in some cases, collateral estoppel law means that you needed to implead that party before you developed facts, before you asked a jury to render judgment on your case. And in this particular lawsuit, what was tried, how it was tried, and what they're now trying to do by saying, we're going to call it a contract claim and we're going to call it an indemnity claim, that series of events that led to this tragedy has already been fully litigated without Morrison having any control over it, and they took positions in the case, and they took it to a verdict, and the equitable principles of driving estoppel apply broadly enough under the case authority we've cited to bar this relitigation. The facts here, as I read the closing argument in some of the transcript below, the lawyers for the plaintiffs certainly argued that even if your people were the ones who left the cabinets open and did other bad things, Morrison was still responsible. And so in any factual sense, there's no judgment that your people were completely clean. So you're saying that in effect, you never get a chance to measure that because of the way the other action went on, right? I mean, there's no factual preemption to say that your people did nothing wrong. Am I right about that? That's correct. That was not part of the jury verdict, but the bundle of issues that they litigated through verdict allows estoppel to apply in this case. Okay. I think we understand your argument. Thank you very much. Mr. Lederman. With respect to the breach of contract case, comparative negligence on our part would not in fact be a bar to our breach of contract action. Yes, the principal may sue the agent after the first case is over with, and pleader is not mandatory under Michigan law. And there were no principal agent issues that were litigated in the underlying Henderson case. It was strictly negligence issues that were litigated there. The Morrison's reliance upon the Monat decision is completely misplaced because Monat did not involve resolving the issue of whether or not there was a valid judgment. Monat instead created an exception to the general rule of strict privity and said that because the defendant in the first litigation had the full and complete opportunity to litigate the injury, the damage issues at issue, then the court was going to waive the strict privity requirement. There was absolutely nothing in that case that discussed the issue of a valid judgment remaining. This case wasn't called upon to determine that percentage of culpability, was it? Just finding out if your client was negligent or not? Correct. They didn't know anything about Morrison, I guess, except in a general way? The only thing they knew is that Morrison was the last ones in the kitchen. They had their kitchen responsibilities. In the allegations of leaving the cabinet door unlocked, Morrison had that responsibility and was the last one to do it. They knew that was your argument. They perhaps did not buy all of it. They might or might not because... Yes, but the plaintiff's side was throwing three or four different possible evils on your part and they might have ruled on any one of them. As I read it, it might have been Morrison didn't leave the cabinets open, but you should have checked on it or you should have trained them or you should not have let Ms. Henderson wander. But there was no pro-rata liability finding in the underlying case. Can I just mention one thing really for both of you, which I know wasn't brief, but I just can't figure out in my head the answer. It's a case that's called Munsingware. In this U.S. Supreme Court decision from just Monday, they apply it. The normal rule is that when something gets mooted on appeal, is you vacate the lower court judgment. That has nothing to do with why it got mooted. It has nothing to do with the terms of a settlement. It's just that if something gets mooted on appeal, the norm is to vacate the judgment. And I'm pretty confident when they do that, the vacated judgment has no collateral estoppel effect. So I'm just curious how that principle would work in the context of settlement. It's quite possible it means nothing that the settlement required the vacation of the jury verdict. It's quite possible that would have happened anyway because a settlement moots an appeal. I don't know. I'm asking a question. I know you haven't briefed it. If you have an answer, tell it to me. But if you don't, think about it. And if you have an insight, write us. If you don't write us, we'll assume you don't have an insight. May I have a week? May we have a week to file a supplemental correspondence? Yeah, I mean, I'm not insisting on it. But if we don't hear from you in a week, we'll assume you can't think of why this has anything to do with this case. Do you have the spelling off the top of your head? Munsingwear? M-U-N-S-I-N-G-W-E-A-R. It's a clothing company. Munsing, M-U-N-S-I-N-G-W-E-A-R, like clothing that you wear. So, yeah. But if we don't hear from you in a week, don't worry about it. And if we do, we'll be eager to hear what you have to say. Thanks to both of you for your helpful arguments and briefs. The case will be submitted, and the clerk can call.